UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CYNTHIA R. BAXTER,                                    04-CV-0428E(Sr)

                        Plaintiff,

                                                     MEMORANDUM

        -vs-
                                                        and

VINCENZO ANELLO, as Mayor, and formerly as
   Councilmember of the City of Niagara Falls, NY, and        ORDER[1]
CITY OF NIAGARA FALLS, NEW YORK,

                        Defendants.

_____

## INTRODUCTION and BACKGROUND

        Plaintiff commenced this action (Dkt. #1) on June 7, 2004 against defendants,

the City of Niagara Falls ("City") and its mayor, Vincenzo Anello ("Anello"), alleging

that her position as City Clerk was a property interest and that she was denied this

property (*i.e.*, she was discharged from the position) without due process, in violation

of the Fifth and Fourteenth Amendments to the United States Constitution and the

Charter of the City of Niagara Falls (First cause of action), that she was discharged

from her positions as City Clerk and Registrar of Vital Statistics due to her political

affiliation, in violation of the First Amendment to the United States Constitution

(Second cause of action) and that she was not compensated for her position as

Registrar of Vital Statistics and was entitled to fees pursuant to New York Public

Health Law ("NYPHL") §§4124(2) and 5173(3) (Third cause of action).

_____

        [1]This decision may be cited in whole or in any part.

In her complaint, plaintiff claims she was employed as the City Clerk of the City of Niagara Falls from January 1, 2000 until her discharge on December 31, 2003. Plaintiff claims that the City Clerk position was a continuing appointment, without a specific term and was a non-policy making, non-confidential governmental position for which political party affiliation was not required for the effective performance of the duties of said office.  Plaintiff was appointed as Registrar of Vital Statistics for the City of Niagara Falls, also on January 1, 2000, which position was for a four-year term to end on December 31, 2003 and also claimed to be a non-policy making, non-confidential governmental position.  She further claims that, although she was compensated for her City Clerk appointment, she was not compensated for her Registrar appointment because of a formal policy of the City.  Plaintiff claims that, upon election of the new mayor — Anello, she was informed by letter from him that her position as City Clerk would be terminated as of December 31, 2003.  She claims that Anello did not get confirmation by a majority of the City Council (as she alleges is required) to terminate her appointment and merely proceeded to appoint her replacement and, on January 1, 2004, requested City Council approval of such replacement.  She alleges that Anello replaced her solely for political reasons.

On January 18, 2006, plaintiff moved for partial summary judgment on her First (due process) and Third (NYPHL) causes of action (Dkt. #14).  Also on January 18, 2006, defendants moved for summary judgment seeking dismissal of all of plaintiff's claims (Dkt. #19).  The arguments in support of defendant's motion with respect to

the First and Third causes of action are fundamentally the same as their arguments in opposition to plaintiff's motion; hence, they will be addressed together, *infra*.  The parties have filed extensive papers on both motions, the matter was presented for oral argument before the Court and is now before it for decision.

## DISCUSSION

The Court cites current authority for the familiar standard:

> "∗∗∗ [S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico* v. *City of New York*, 132 F.3d 145, 149 (2d Cir.1998).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *R.B. Ventures, Ltd.* v. *Shane,* 112 F.3d 54, 57 (2d Cir.1997).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. *United States* v. *Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue* v. *Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

*Beth Israel Medical Center* v. *Horizon Blue Cross and Blue of New Jersey, Inc.,* 448 F.3d 573, 579 (2d Cir. 2006); *see also GlobalNet Financial.Com, Inc.* v. *Frank Crystal & Co.,*

*Inc.,* 449 F.3d 377, 382 (2d Cir. 2006).  In response to a properly supported summary judgment motion, the party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but \*\*\* must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e); *GlobalNet Financial.Com, supra*; *see also Kerzer* v. *Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) ("conclusory allegations, conjecture and speculation \*\*\* are insufficient to create a genuine issue of fact").  Furthermore, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

The following facts are not in dispute except as to those facts which are indicated to be claimed by one party or the other.[2]  Plaintiff was appointed to the position of City Clerk by past mayor, Irene Elia, such appointment having been confirmed by the City Council on January 1, 2000.  She was also appointed to a four-year term as Registrar of Vital Statistics on that date.  Plaintiff claims that the City Clerk position was a continuing appointment and not for a specific term.  The City Charter does not specify a term, but defendants claim that it is the City's normal practice to appoint and confirm this position anew every four years.

---

[2]Most of these facts are gleaned from plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 and defendants' Response thereto.

Plaintiff claims that during her entire Registrar tenure, she "did not receive any compensation whatsoever" for the performance of her Registrar duties.[3] Defendants deny this, claiming that the compensation plaintiff received for her duties as City Clerk also constituted compensation for her duties as Registrar.  In doing so, they state that plaintiff "did not receive any *additional* compensation for the performance of these duties" (emphasis in original).

In November 2003, Anello was elected mayor and his term commenced on January 1, 2004.  On December 15, 2003, Anello sent plaintiff a letter, which stated as follows:

> "In connection with the new administration for the City of Niagara Falls, my transition team is considering candidates for the position of CITY CLERK.  It is anticipated that your duties will officially end on Wednesday, December 31st, 2003 at midnight, at which time your employment will end.
> "During the next several weeks, while we are completing the process of reviewing candidates, I would appreciate your continued support.  Also, I want to thank you for your service to the City and the residents of Niagara Falls."
> (Dkt. #16, Ex. H)

Plaintiff claims that this letter effectively terminated her employ.  Defendants claim that it was merely expressing Anello's intent not to re-appoint her.  Section 2.3(a) of the City Charter contains the following language:

---

[3]In about February, 2001, plaintiff did advise the former City administration (*i.e.*, under Mayor Elia) that she believed she was entitled to compensation (whether described as additional or separate) for her Registrar duties.  She was not awarded the separate compensation.  The parties dispute what the administration's reasoning was in advising her that she was not entitled to this additional compensation.

> "The Mayor shall appoint the Administrator, who shall serve at his pleasure.  The Mayor shall also appoint, subject to confirmation by a majority of the Council, a Corporation Counsel, a Director of Finance, and a City Clerk, who serve at the pleasure of the Mayor except that they shall not be dismissed from office unless the Council shall confirm such action by majority vote.  Nothing herein provided shall prevent the suspension or dismissal of an officer or employee for cause and pursuant to law."

Neither outgoing mayor Elia, nor mayor-elect Anello obtained confirmation from the City Council to terminate or dismiss plaintiff.  On January 1, 2004, Anello appointed Carol Antonucci ("Antonucci") to the position of City Clerk, which appointment was confirmed by the City Council.  From 2000 through 2002, plaintiff's salary was $40,000 and in 2003 her salary was $41,300.  The parties dispute the amount in fees collected by the Registrar of Vital Statistics during these years.  The content and meaning of other relevant statutes will be discussed, *infra*.

### First Cause of Action

Plaintiff maintains that she has a property interest in her position as City Clerk and was entitled to due process before such position could be taken from her by defendants. She contends that she is entitled to summary judgment because her due process rights were violated as a matter of law in that she was not afforded any meaningful opportunity to dispute Anello's decision to terminate her.  In support of this, she argues a number of things.  First, she claims that the Court in this District has already squarely established that the Niagara Falls City Clerk position is a non-

policy making, non-confidential governmental position and is protected by the First Amendment against politically motivated termination.  While this may be true, it is relevant only to the Second cause of action herein, not the First cause of action at which plaintiff's motion is directed.[4]  Second, she argues that, as a City Clerk of Niagara Falls, she is protected from discharge, except for cause, by both state law and the City Charter §2.3(a).  In sum, she argues that Anello's politically motivated decision to discharge her from her position by informal letter or memorandum and without confirmation from the City Council, as required by the City Charter, deprived her of an opportunity to be heard in a meaningful way with respect to the termination of her position as City Clerk.

In response to plaintiff's motion and in support of their motion for summary judgment, defendants contend that plaintiff has not demonstrated that she has a property interest in her City Clerk position and, even if such property interest exists, she received constitutionally sufficient notice of defendants' decision and had an opportunity to be heard with respect to this decision.

---

[4]The case cited by plaintiff in support of this contention is *Paradise* v. *O'Laughlin*, 621 F.Supp.694 (W.D.N.Y. 1984).  The plaintiff in that case was plaintiff's predecessor, Elise Paradise, who brought an action against the City of Niagara Falls pursuant to 42 U.S.C. §1983 and 28 U.S.C. §1343, seeking to enjoin the defendants from firing her for political reasons.  This was a First Amendment case, not a due process case.  The Judge in that case (Curtin, C.J.) issued the injunction, holding that the position of City Clerk was a non-policy making position and finding that the plaintiff had sufficiently demonstrated that her political affiliation was a substantial motivating factor for her dismissal.  Nowhere in that case did the Court find that the plaintiff had a property interest in her City Clerk job.  The Court views this argument as relevant to plaintiff's Second cause of action; however, plaintiff has not moved for summary judgment upon that claim.

In order to establish an entitlement to due process herein, the plaintiff must first establish that she possesses a property interest of constitutional dimensions. *Furlong* v. *Shalala*, 156 F.3d 384, 393 (2d Cir. 1998) *(citing Donato* v. *Plainview- Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 628-29 (2d Cir.1996), *cert. denied*, 519 U.S. 1150 (1997)).  Such an interest is more than a unilateral expectation and is a "legitimate claim of entitlement" stemming from an independent source such as state law, rules, contracts "or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Ciambriello* v. *County of Nassau*, 292 F.3d 307, 313 (2d Cir.2002) *(quoting Bd. of Regents of State Colls.* v. *Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701 (1972)); *See also Ezekwo* v. *New York City Health & Hospitals Corp.,* 940 F.2d 775, 782 (2d Cir. 1991)(*citing Perry* v. *Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700 (1972)(adherence to a particular pattern of conduct could create an expectation of continued employment in employees who lacked tenure); *Furlong, supra* (*citing Regents* v. *Roth, supra* at 577.  "Identifying the relevant property interest is *** a two-step process.  First, we must determine whether some source of law other than the Constitution [[5]], such as a state or federal statute, confers a property right on the plaintiff."  *O'Connor* v. *Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)(internal citation omitted).  Second, if such a property interest is found, "we must then determine

---

[5]It is well settled that property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Regents*  v. *Roth*, *supra* at 577.

whether that property right 'constitutes a property interest for purposes of the Fourteenth Amendment'." *Ibid.* (*quoting Town of Castle Rock* v. *Gonzales*, 545 U.S. 748, 125 S.Ct. 2796, 2803 (2005)).  The focus herein is on the first step, as it is clear that a public employee's interest in continued employment, if found to be a property interest, constitutes a significant property interest for purposes of the Fourteenth Amendment.  *See Horvath* v. *Westport Library Ass'n.*, 362 F.3d 147, 151 (2d Cir. 2004)(*quoting Otero* v. *Bridgeport Hous. Auth.*, 297 F.3d 142, 151 (2d Cir.2002) ("There is no question that '[a] public employee who has a right not to be fired without just cause * * * has a property interest in her employment that qualifies for the protections of procedural due process.'"); *see, e.g., DeMichele* v. *Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir.1999) (a public school teacher has a property interest in his tenure and cannot be fired without due process).

Plaintiff claims that both state law and the City Charter confer a property interest in her City Clerk position.  With respect to state law, plaintiff claims that New York's Constitution creates a property interest via Article 5, section 6, which states that "[a]ppointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive".  Plaintiff presents this argument in a footnote and, other than quoting a portion of this state Constitutional provision, cites no authority for her interpretation that such creates a property interest in her job as

City Clerk.  Plaintiff cites to no judicial authority which construes this provision as creating a property interest in any municipal position.  As such, the Court declines to hold that the state constitutional requirement that public employee appointments be made according to merit and fitness *ipso facto* confers a property interest in plaintiff's position as Niagara Falls City Clerk.  *See Saraceno* v. *City of Utica,* 733 F.Supp. 538, 541 (N.D.N.Y. 1990)(*citing Matter of Deas* v. *Levitt*, 73 N.Y.2d 525, 532, 541 N.Y.S.2d 958, 962, *cert. denied,* 493 U.S. 933 (1989)) ("under New York law successful completion of a civil service examination does not create a property interest in appointment to the position for which the applicant has applied"); *Andriola* v. *Ortiz*, 82 N.Y.2d 320, 324, 624 N.E.2d 667, 669 (1993) (same).

It is the provisions of the City Charter with which this Court is more concerned. The Charter states that the City Clerk serves at the pleasure of the mayor.  At first blush, this could be construed as creating nothing more than an employment at will and would not implicate constitutional concerns.  *Abramson* v. *Pataki*, 278 F.3d 93, 99 (2d Cir. 2002)(*citing  Goetz* v. *Windsor Cent. Sch. Dist.*, 698 F.2d 606, 608-9 (2d Cir.1983) ("Employees at will have no protectable property interest in their continued employment")(other citations omitted).  However, this statement is only a portion of a sentence in an entire section of the City Charter relative to the appointment of the City Clerk and other official City positions and can not be read in a vacuum.  The entire text of the section is relevant in determining its meaning.

The first sentence of the section provides for the appointment of an Administrator and contains language that the Administrator serves at the pleasure of the mayor and *does not* contain the language requiring Council approval prior to removal.   The second sentence provides for the appointment to other positions, including the City Clerk, who are also to serve at the pleasure of the mayor (the portion defendants stress) and *further dictates* that the mayor cannot dismiss them from office without confirmation by majority vote of the City Council (the portion plaintiff stresses).[6]   While the Court does not construe this provision as 'protecting plaintiff from discharge except for cause', as she has urged, the distinction between the Administrator's position and the other positions do imply that the other positions, City Clerk among them, are to be afforded more protection from dismissal than the Administrator.   The Charter's repeated use of the word *shall* evokes a mandatory course of action.  *See United States* v. *Maria*, 186 F.3d 65, 70 (2d Cir. 1999) ("the word 'shall' is 'used to express a command or exhortation,' and is 'used in laws, regulations, or directives to express what is mandatory'") (internal citation omitted).  This language alone creates an expectation in plaintiff that she will not be dismissed

---

[6]The last sentence in this section contains language permitting the dismissal or suspension of any officer or employee for cause. This provision does not 'prevent' termination except for cause, rather, it 'permits' it when there is cause.  In any event, there is no claim herein that plaintiff was terminated for cause.

absent a majority vote of the City Council.[7]  The Court, however, is hesitant to declare that this is enough to confer a constitutionally protected property interest.

Also relevant to this inquiry is whether the City Clerk position was or was not for a specific term.  Plaintiff claims that it is a continuing appointment and not for a specific term.  It is undisputed that the City Charter defines no term limits for this position.  Defendants claim that the City has a practice of appointing the City Clerk anew every four years and urges that this practice is evidence that the City Clerk position should be found to be for only a four-year term.   In support of this, defendants submit records from the City Council reflecting five resolutions confirming City Clerk appointments dating back to 1988[8], including the resolution in which plaintiff was appointed in 2000 and the one in which Antonucci was appointed to replace her in 2004.   The remaining three, from 1988, 1992 and 1996 were all resolutions to confirm the City Clerk appointment of Elise Paradise[9], presented to the Council by three different mayors.  Ms. Paradise served as City Clerk from 1982 to 1999, when she retired.   Antonucci served as Acting Clerk until plaintiff's appointment in 2000. (See Dkt. #23, ¶¶4, 11 and Ex. B).

---

[7]To the extent that defendants' argument is that the appointment and vote confirming Antonucci constituted a vote to terminate plaintiff, it is not persuasive.

[8]The date of adoption of the hereto applicable City Charter.

[9]See footnote 4, *supra*.   The Paradise lawsuit predated the adoption of the current Charter.

Citing a 1982 District Court case from the Northern District[10], defendants urge that this establishes a four-year term and forecloses plaintiff's claim of entitlement or property interest.  This evidence, however, can also be viewed as an indication that the City Clerk position, while technically appointed every four years, was intended to be a continuing position — *i.e.*, Ms. Paradise remained in her position as City Clerk for many years and was routinely re-appointed until the date she retired in 1999.  This is a disputed issue for a jury to decide.

Even if the evidence established that the City Clerk appointment was intended to be only a four-year term, plaintiff may still establish an entitlement to re-appointment because "adherence to a particular pattern of conduct could create an expectation of continued employment".  *Sindermann, supra* at 602, 92 S.Ct. at 2700; *Ezekwo, supra* at 783 ("the 'policies and practices' of the institution were such that an entitlement to the position" was created).   "A claim of entitlement is not precluded by absence of a formal right memorialized in an individual contract or a collective bargaining agreement because not every term of a contract must be reduced to writing, and additional contractual provisions may be implied into a contract as a result of a course of dealing between the parties.  Thus, the parties through their conduct and practice can create additional rights and duties." *Malla* v. *University of Connecticut*, 312 F.Supp.2d 305, 321 - 322 (D. Conn. 2004)(*citing*

---

[10]*Visser* v. *Magnarelli*, 530 F.Supp. 1165 (N.D.N.Y. 1982).

*Ezekwo, supra*, 940 F.2d at 782 and *quoting Sindermann, supra*, 408 U.S. at 601).  Such a pattern of conduct or practice is also suggested by the evidence described above — to wit, the consecutive re-appointment of the same person to the City Clerk position, by different mayors, since the inception of the current City Charter.[11]  The Court acknowledges that this pattern alone may be insufficient to confer a property interest to the plaintiff.  As it was not she who was consistently re-appointed, her claim of entitlement thereto is not as strong as some of the cases that confer such.  *See Ezekwo, supra; Malla, supra; c.f., Schwartz* v. *Mayor's Comm. on Judiciary of City of N.Y.*, 816 F.2d 54, 57 (2d Cir. 1987) (the routine reappointment of incumbent judges did not operate to raise plaintiff's "subjective expectation" to a constitutionally protected right, especially when doing so would contradict the relevant statutes and rules).  It does, however, convey an expectation of sorts.  This expectation, coupled with the expectations created by the language of the City Charter would create a "reasonable and well founded" expectation of a nature that would rise "to the level of a property interest entitled to protections afforded by the Due Process Clause" *Ezekwo, supra,* at 783.

While evidence has been presented regarding the length or term to be attributed to the City Clerk position, as stated above there are genuine issues in

---

[11]The plaintiff also submitted evidence suggesting routine re-appointment of the other positions covered by this section of the City Charter.  (See Baxter Deposition pages 127 & 128 at Dkt. #16, Ex A, pp. 13 - 14).

dispute regarding this material fact which preclude summary judgment at this time. In sum, based on the facts presented to the Court herein, a reasonable jury could find that the City Clerk position was either (1) routinely re-appointed, (2) was intended to be a continuing appointment or (3) was intended to be for only a four-year term. As this relates to the determination of an essential element of plaintiff's due process claim, accordingly, summary judgment must be denied.

If, at trial a jury finds that the evidence presented establishes that the City Clerk position is a four-year term appointment without reasonable expectation of routine re-appointment, the Court will hold that plaintiff does not have a property interest therein and is not entitled to due process. *See, e.g. Burrell* v. *City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004)(plaintiff did not have a property interest in the city clerk position after the expiration of his appointed term and any action to either remove or replace him after the expiration of such term did not implicate the protections of due process); *Hudgins* v. *City of Ashburn, Ga.*, 890 F.2d 396, 406 - 407 (11th Cir. 1989)(under clearly established law, the city clerk position was for a finite term and afforded plaintiff no right to continued employment as city clerk after the expiration of that term.  Therefore, legislative vote to not to re-elect plaintiff did not implicate any constitutionally protected property rights).

If, however, a jury were to find that the evidence establishes that the City Clerk position was a continuing appointment, or that it was routinely re-appointed, plaintiff would have established a legitimate claim of entitlement to her position and, hence

would be entitled to due process.  It must then be determined "whether the plaintiff

received constitutionally adequate process in the course of the deprivation."

*O'Connor, supra*, 426 F.3d at 196 (*citing Harhay* v. *Town of Ellington Bd. of Educ.*, 323

F.3d 206, 212 (2d Cir. 2003)).

> An essential principle of due process is that a deprivation
> of life, liberty, or property 'be preceded by notice and
> opportunity for hearing appropriate to the nature of the
> case'.  We have described 'the root requirement' of the Due
> Process Clause as being 'that an individual be given an
> opportunity for a hearing before he is deprived of any
> significant property interest.' This principle requires 'some
> kind of a hearing' prior to the discharge of an employee
> who has a constitutionally protected property interest in
> his employment.  As we pointed out last Term, this rule
> has been settled for some time now.  Even decisions
> finding no constitutional violation in termination
> procedures have relied on the existence of some
> pretermination opportunity to respond.

*Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487 (1985)(footnote

and internal citations omitted).

Indeed, the City Charter provides a process for the removal of the City Clerk

and the other relevant appointed positions and, to this end, the Charter is clear: the

City Clerk "shall not be dismissed from office unless the Council shall confirm such

action by majority vote".  While it is not clear exactly what process is afforded in

accordance with this provision, plaintiff is not arguing that the provision, if followed,

would not have provided her with constitutionally adequate due process.  Rather, she

argues that Anello and the City, in not complying with this provision, violated her constitution rights to due process.

After a thorough review of the evidence submitted, the Court finds that no reasonable juror could find that plaintiff received constitutionally adequate notice and opportunity to be heard prior to her termination as City Clerk.[12] While a reasonable jury might find that the letter from Anello to plaintiff prior to his taking office might qualify as adequate notice, there clearly was, in that letter or at any time thereafter, no opportunity for plaintiff to be heard regarding her dismissal. The letter presented, as a *fait accompli*, that her "employment will end" on the stated date. It further requested her "support" in the selection of her replacement. She was not told why Anello had decided to end her employment or what she could do in the event that she disagreed with his decision or the reasoning behind it.

Defendants' argument that plaintiff had adequate opportunity to be heard because she could have voiced her opposition to the Antonucci appointment is without merit. This attempt to substitute the process by which plaintiff was terminated with the process employed relative to the appointment of her successor is entirely unavailing. It is unreasonable to find that plaintiff was required to know that her only opportunity to oppose her dismissal would be to speak up at a meeting

---

[12]This, of course, presumes the finding of a property interest, as discussed, *supra*.

to confirm her replacement.[13]   The Council vote confirming her replacement is irrelevant to the process that was due to her and will not be substituted in place thereof.

It is clear to this Court that the relevant provision of the City Charter with respect to plaintiff's dismissal was not followed in this case.  Further, nowhere during the time period relevant to this cause of action was plaintiff given any reasons as to why she was being dismissed, nor was she given any opportunity to present her side of the story as to why she should not be dismissed.[14]  Therefore, if at trial a jury finds that the City Clerk position was a continuing appointment, or that its incumbent was routinely re-appointed, a verdict will be directed in favor of plaintiff on her First cause of action.   For the time being, however, summary judgment is DENIED to both plaintiff and defendant on this cause of action.

*Second Cause of Action*

Plaintiff did not seek summary judgment on this cause of action. Defendants' summary judgment motion seeks to dismiss this cause of action, urging that plaintiff has failed to show that she was engaged in constitutionally protected political

---

[13]This would also require plaintiff to somehow know the reasons for her dismissal and prepare to dipsute them.  The Court finds this  logic to be chimerical.

[14]Defendants devote a large portion of their motion for summary judgment detailing a litany of complaints Anello had about plaintiff's performance as City Clerk, presenting them as reasons for not 're-appointing' her (see, Dkt. #27, ¶¶12 - 35).  This evidence is immaterial to plaintiff's due process claim.  Irrespective of whether these complaints played a part in ending plaintiff's employment, there clearly is no evidence that any of these complaints was ever presented to plaintiff, at any time prior to this litigation, as a reason for her dismissal.

conduct or that such was the motivating factor behind her discharge.  In response, plaintiff has withdrawn this cause of action. (See Dkt. #32, ¶9; Dkt. #36, p. 1). Nevertheless, the Court has reviewed the evidence submitted by defendants in support of the motion and hereby finds that it is properly supported.  Based on the undisputed facts as presented by defendants (see Dkt. #27 and supporting evidence cited therein), which have not been disputed by plaintiff[15] and which are relevant to this cause of action, the Court hereby finds that no reasonable trier of fact could return a verdict for plaintiff on this cause of action.  Defendants' motion for summary judgment on plaintiff's Second cause of action is therefore GRANTED.

*Third Cause of Action*

The gravamen of plaintiff's asserted Third cause of action is (1) that compensation for her position as Registrar of Vital Statistics is mandated by state law, specifically, NYPHL §§4121, 4124 and 4173, (2) that she was entitled to fees pursuant to NYPHL §§4124(2) and 4173(3), (3) that she recieved "no compensation whatsoever for performance of her duties as Registrar" because of a provision in the City Charter and (4) that "[b]y virtue of defendant's actions" she is entitled to damages in the amount of the fees collected by the city under these provisions of the NYPHL.  In the instant motion, plaintiff asserts that she is entitled to summary

---

[15]Some of the facts stated in this document have been disputed by plaintiff (Dkt. #31); however, they are not material to her second cause of action.  Nevertheless, no fact which has been disputed by plaintiff has been considered by this Court in determining this motion.

judgment on this cause of action because the language of the NYPHL governing

compensation of Registrars of Vital Statistics is clear and unequivocal, and, to the

extent that the City Charter provides that the Registrar of Vital Statistics for the City

of Niagara Falls shall receive no compensation for performing such Registrar duties,

it conflicts with New York law and is preempted by the state law.   In their motion,

defendants claim that they are entitled to summary judgment because there is no

legal basis for the assertion of any claim under state law — to wit, New York Public

Health Law, Article 41 does not provide for or create an independent cause of action.

NYPHL §4124(2) provides:

> "If a city clerk, town clerk or village clerk is appointed a
> registrar of vital statistics, as authorized by section forty-
> one hundred twenty-one of this article, all fees collected by
> such registrar in the discharge of his duties shall be the
> property of the city, town or village and shall be paid to the
> chief fiscal officer of such city, town or village, provided,
> however, that an amount equivalent to the sum of such
> fees shall be paid at least monthly by such chief fiscal
> officer to such city clerk, town clerk or village clerk entitled
> to receive fees as a registrar of vital statistics."

Similarly,  §4173(3) provides:

> "The registrar shall be entitled to a fee of ten dollars, * * *
> provided, however, that if such registrar is a city clerk,
> town clerk or village clerk, he shall collect such fees for and
> on behalf of the city, town or village in which he serves,
> provided, however, that an amount equivalent to the sum
> of such fees shall be paid at least monthly by such city,
> town or village to such city clerk, town clerk or village clerk
> entitled to receive fees as a registrar of vital statistics."

From this, plaintiff gleans an entitlement to personal compensation in the amount of the fees collected.  Section 45 of the City Charter, however, clearly states that the City Clerk shall perform the duties of the registrar of vital statistics and shall not receive additional compensation for performing those duties.  Plaintiff argues that, to the extent that the Charter conflicts with state law, state law shall preempt the Charter because a local government has the power to adopt and amend local laws only to the extent that they are not inconsistent with the provisions of the state constitution or any general law.  *DJL Restaurant Corp.* v. *City of New York,* 96 N.Y.2d 91, 94 (2001); *Consolidated Edison Co. of New York, Inc.* v. *Town of Red Hook*, 60 N.Y. 2d 99, 105, 107 (1983).

Plaintiff further offers a New York State Comptroller Opinion which directly opined about a Niagara Falls City Clerk who was also appointed registrar of vital statistics, stating that the registrar position in and of itself is not a City position and hence the City did not possess the power to adopt a local law prohibiting the registrar from retaining the fees provided for in the New York Public Health Law.  25 Op. State Compt. 354 (1969).  Having been enacted in 1965, the Niagara Falls City Charter provision in the instant case is the same one that is discussed in that Opinion (see Dkt. #16, Ex. G).  The New York Public Health law, however, is not.  In 1969, there was no provision in the Public Health Law which provided that the registrar in a city (as opposed to a town or village) may be paid a salary instead of the enumerated fees. *See* 25 Op. State Compt. at 355.  The absence of a provision for a

city registrar was noted as particularly relevant in a 1981 opinion issued by the State

Comptroller regarding this issue.  Therein, the Comptroller opined:

> "We note that, unlike towns and villages, cities are not
> authorized under the Public Health Law to set a salary for
> a registrar in lieu of the registrar retaining the fees (cf.
> Public Health Law, § 4124(3)).  Moreover, in 25 Opns St
> Comp, 1969, p 354, we concluded that a city could not, by
> local law, provide a salary in lieu of fees for the registrar or
> provide that the fees be turned over to the city.  Thus, it
> would appear that the only way in which a city registrar
> would not be entitled to the fees of both section 4124 and
> 4173 would be pursuant to special act of the State
> Legislature, in the form of a charter provision or
> otherwise."

1981 Op. St. Compt. No. 81 - 88, 1981 WL 16661 (N.Y.St.Cptr.).  In 1987, however, the

State Legislature did act, and amended the New York Public Health Law to allow a

registrar appointed for a city to be paid a salary in lieu of fees.  The law, as amended

stated, is as follows:

> "3. (a) In any city, town or village, the legislative body of
> the city, town board or board of trustees may provide that
> the registrar be paid a stipulated daily, monthly, or annual
> salary instead of the fees provided for by this article.
> (b) If a stipulated salary is fixed, all fees collected by the
> registrar in the discharge of his duties shall be the property
> of the city, town or village and shall be paid to the chief
> fiscal officer, supervisor or the village treasurer, as the case
> may be.
> (c) In any city, town or village where the compensation of
> the registrar is fixed by the legislative body of the city,
> town board or board of trustees at a stipulated salary, the
> provisions herein as to the payment of fees or as to the
> certification by the commissioner shall not apply."

N.Y. Pub. Health Law §4124(3), as amended by L. 1988, c. 644.  This version of the law was in effect during the time of plaintiff's employment with the City, and in fact is still in effect to date.  *Ibid*.

Whether or not the City's Charter provision prohibiting additional compensation for the registrar position properly provided "that the registrar be paid a stipulated *** salary instead of the fees provided for by this article" as contemplated by this section is immaterial to the Court, as plaintiff has no private cause of action under New York Public Health Law, Article 41 to bring this action. Both parties acknowledge that the Public Health Law does not contain any provision for the enforcement of a registrar's right to fees under this statute by way of a private cause of action.[16]  Defendants have stated that they could not find a single reported case where a registrar of vital statistics brought private suit for compensation under this statute.  The Court has likewise been unable to find such a case.

The plaintiff urges the Court to imply a private cause of action under New York Law.  However, while citing New York's standard for evaluating whether a right of action can be fairly implied in a statutory scheme[17], plaintiff cites to no case wherein a New York court has implied a cause of action under the statute in question, or in a case where a separate remedy was also available as is the case here (plaintiff could

---

[16]Plaintiff points this out in contrast to New York Executive Law §297 which contains such provisions allowing a private right of action for violations of the Human Rights Law.

[17]*Carrier* v. *Salvation Army*, 88 N.Y.2d 298 (1996).

- 23 -

have brought a state court action pursuant to Artilce 78 of the New York Civil Practice Law and Rules).   Defendants have outlined a series of cases where an implied right of action has been considered only where there was otherwise no remedy available to the party.  The Court interprets these cases — as defendant does — that the courts do not consider an implied right of action unless there is no other avenue of relief available.  The Court therefore finds that there is no need to imply a cause of action herein where plaintiff clearly had a remedy in Article 78.  Hence, defendants' motion to dismiss plaintiff's Third cause of action is hereby GRANTED.

## **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that plaintiff's motion for summary judgment on her First and Third causes of action (Dkt. #14) is DENIED and defendants' motion for summary judgment (Dkt. #19) is partially GRANTED in that plaintiff's Second and Third causes of action are hereby dismissed, and in all other respects, it is DENIED.

DATED:       Buffalo, N.Y.

              March 21, 2007

                              _____
                              */s/ John T. Elfvin*
                              JOHN T. ELFVIN
                              S.U.S.D.J.